# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CESAR CRUZ-HERNANDEZ** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-1378-D** |
| | ) | |
| **KRISTI NOEM, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, Cesar Cruz-Hernandez, a Mexican citizen proceeding with counsel, filed a petition for a writ of habeas corpus ("Petition") under 28 U.S.C. § 2241 challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] Chief United States District Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 3). In accordance with the briefing schedule, (Doc. 6), Respondents timely filed a Response in Opposition to the Petition for Writ of Habeas Corpus.[3] (Doc. 8). Petitioner

---

[1] Petitioner is housed at Cimarron Correctional Facility in Cushing, Oklahoma. (Doc. 1, at 2).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] The response was not filed on behalf of Respondent Scarlet Grant, Warden of the Cimarron Correctional Center, because she is not a federal official. (Doc. 8, at 7 n.1). The undersigned agrees with the responding Respondents that a separate response from Warden Grant is not necessary to resolve this matter.

timely filed a Reply. (Doc. 9). As fully set forth below, the undersigned recommends that the Court **GRANT** the Petition in part and order Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days or otherwise to release him if no hearing is held within that time.

## I.    Introduction

This action turns on one question: can Petitioner – an alien who has not been admitted or inspected, but has lived in the United States for over twenty years – be classified as an alien who is an "applicant for admission" under 8 U.S.C. § 1225 or must he instead be classified as an alien under 8 U.S.C. § 1226? The answer to this question directly affects Petitioner's detention, as the parties agree that he is subject to mandatory detention if he is classified as an applicant for admission under § 1225 and that he is entitled to a bond hearing if he is classified as an alien under § 1226.

While the Immigration and Nationality Act ("INA") is not new, this question is newly before federal courts across the country because of a change in interpretation by the executive branch. For many years, Immigration Judges provided bond hearings for detained aliens who had entered the country without inspection. *See Jonathan Javier Yajure Hurtado*, 29 I. & N. Dec. 216, 225 n.6 (BIA 2025) ("*Hurtado*"). But on September 5, 2025, the Board of Immigration Appeals ("BIA") determined that an immigration judge does not have authority to hear a request for bond by an alien present in the United States who has not been admitted after inspection because the alien was "subject to mandatory detention" under Section 1225. *Id.* at 229. This change in procedure has led to a

nationwide influx of habeas corpus petitions seeking bond hearings for aliens who were recently detained after living for years in the United States without inspection.

## II.    Background[4]

Petitioner entered the United States in 2002 without being inspected or admitted. (Doc. 8, at Ex. 1, at 2).  Petitioner alleges he was arrested for operating a vehicle without a driver's license.  (Doc. 9, at 3).  On or about October 31, 2025, ICE encountered Petitioner while he was in custody.  (Doc. 8, at Ex. 1, at 2).  On or about November 1, 2025, ICE transferred Petitioner to its custody, and on or about November 3, 2025, ICE instituted removal proceedings, alleging Petitioner was an alien present in the United States who had not been admitted or paroled.  (*Id.* at Ex. 1, at 2; *id.* at Ex. 2, at 1).  Respondents assert that Petitioner is detained pursuant to 8 U.S.C. § 1225.[5]  (*Id.* at 16).  Petitioner asserts that he "has been held without the possibility of bond due to the misapplication of 8 U.S.C. § 1225(b)(2)(A) and the [BIA's] recent decision in [*Hurtado*]."  (Doc. 1, at 2).  Petitioner's removal proceeding is ongoing.  (Doc. 8, at 15-16).

---

[4] Petitioner's counsel erroneously copied the facts from another case into the instant Petition.  (*See* Doc. 9, at 3).  Because "whether [Petitioner] is entitled to a bond hearing under . . . 8 U.S.C. § 1226(a)" is "a purely legal question[]," the undersigned determines that such an error is not fatal to the Petition.  *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025).  In analyzing this case, the undersigned relies upon the uncontested facts included in Respondents' Response and in Petitioner's Reply.

[5] Respondents specifically assert that Petitioner is "detained under [Section] 235 [of the Immigration and Nationality Act]."  (Doc. 8, at 16).  This provision is the same as 8 U.S.C. § 1225.  *See, e.g.*, *Gutierrez v. Baltasar*, 2025 WL 3251143, at *1 (Nov. 21, 2025) (noting the two are the same).

### III.    Petitioner's Claims and Respondents' Response

In Count I, Petitioner asserts his detention violates the Immigration and Nationality Act because his detention under 8 U.S.C. § 1225(b)(2) "does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings . . . ." (Doc. 1, at 12). In Count II, Petitioner contends his detention "without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process." (*Id.* at 13). As relief, Petitioner asks the Court to issue "a writ of habeas corpus requiring that he be released unless Respondents provide a bond hearing under § 1226(a) within seven days." (*Id.* at 3).

Respondents contend that judicial review of Count I is barred by 8 U.S.C. § 1252. (Doc. 8, at 16-20). They also assert that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2). (*Id.* at 20-28). Finally, they contend that Count II is both premature and without basis. (*Id.* at 28-30).

### IV.    Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241 (c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort,* 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

V.    **Analysis**

A.    **The Court Has Jurisdiction to Consider the Petition.**

Based on specific provisions of the INA at issue, Respondents argue this Court lacks jurisdiction to consider Petitioner's claims.  (Doc. 8, at 16-20).  Similar jurisdictional arguments have recently been rejected by multiple district courts throughout the country. *See, e.g.*, *Hasan v. Crawford*, No. 1:25-CV-1408 (LMB/IDD), --- F.3d. Supp. ---, 2025 WL 2682255, at *3 n.7 (E.D. Va. Sep. 19, 2025) ("Federal courts throughout the country have similarly found that these jurisdiction-stripping provisions do not deprive the federal courts of jurisdiction to review a noncitizen's challenge to the legality of his detention.") (collecting cases).  As explained below, the undersigned agrees with those courts that have found jurisdiction exists to consider arguments challenging detention in circumstances similar to Petitioner's.

1.    **Sections 1252(a)(5) and 1252(b)(9).**

Respondents first argue the Court lacks jurisdiction to consider the Petition because (1) the INA channels "claims related to removal orders" to a court of appeals rather than a district court, and (2) such claims include "the decision to effectively begin those proceedings via [8 U.S.C.] § 1225(b)(2)(A) . . . ."  (Doc. 8, at 17) (citing 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9)).  Accordingly, Respondents argue that under § 1252(a)(5) and § 1252(b)(9), the decision to charge and detain Petitioner "can be reviewed by the appropriate court of appeals as part of any appeal of a final order of removal—but not this Court."  (*Id.*)

5

Several courts have recently rejected this jurisdictional argument for the fundamental reason that detention orders "are separate and apart from orders of removal." *Hasan*, 2025 WL 2682255, at \*4 (citation modified).  Challenges to detention orders "are legal in nature and challenge specific conduct unrelated to removal proceedings."  *Garcia Cortes v. Noem*, No. 1:25-cv-02677-CNS, 2025 WL 2652880, at \*2 (D. Colo. Sep. 16, 2025) ("Congress did not intend the zipper clause to cut off claims that have a tangential relationship with pending removal proceedings.  A claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings.") (quoting *Mukantagara v. US. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023)) (citation modified); *Gutierrez v. Baltasar*, No. 25-CV-2720-RMR, 2025 WL 2962908, at \*2-3 (D. Colo. Oct. 17, 2025) (rejecting jurisdictional argument, in part, because the petitioner's claims challenging detention under 8 U.S.C. § 1225 rather than § 1226 due to a change in policy was a challenge to specific conduct unrelated to removal proceedings).

The Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018), recognized the limited circumstances where § 1252(b)(9) would bar a district court's jurisdiction.  The Court in *Jennings* noted the aliens in that case "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar."  *Id.*

Here, like many recent habeas cases by aliens challenging mandatory detention under § 1225(b)(2)(A), "Petitioner does not challenge any removal order because no order

of removal has yet been entered against him. Rather, he challenges the constitutionality and legality of his detention during the period before his removal hearing." *S.D.B.B. v. Johnson,* No. 1:25-cv-882, 2025 WL 2845170, at *3 (M.D.N.C. Oct. 7, 2025). As such, "§ 1252(b)(9) does not deprive the court of jurisdiction." *Id.* This interpretation of § 1252(a)(5) and § 1252(b)(9) tracks the same recent analysis of several district courts. *See, e.g.*, *Caballero v. Baltazar*, No. 25-cv-3120-NYW, 2025 WL 2977650, at *4 (Oct. 22, 2025) (ruling § 1252(b)(9) does not present a jurisdictional bar to an alien challenging "the legality of his continued detention without a bond hearing"); *Hasan*, 2025 WL 2682255, at *4 ("Section 1252(b)(9) does not insulate detention orders from judicial review because they are separate and apart from orders of removal.") (citation modified); *Hernandez Marcelo v. Trump*, No. 3:25-cv-00094-RGE-WPK, --- F. Supp. 3d ----, 2025 WL 2741230, at *6 (S.D. Iowa Sep. 10, 2025) (concluding § 1252(a)(5) and § 1252(b)(9) are inapplicable because the habeas petitioner was challenging his detention without a bond hearing, not an order of removal); *Jose J.O.E. v. Bondi*, No. 25-cv-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670, at *7 (D. Minn. Aug. 27, 2025) (same) (collecting cases). Notably, Respondents provided no example of a recent district court decision adopting their view.

The undersigned agrees with the prevailing analysis from other district courts that have recently considered this question and concludes that § 1252(a)(5) and § 1252(b)(9) do not deprive the Court of jurisdiction.

## 2. Section 1252(g)

Respondents also argue that the INA limits a district court's jurisdiction to consider "any cause or claim by or on behalf of any alien arising from the decision or action by

[DHS] to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien under this chapter." (Doc. 8, at 17) (quoting 8 U.S.C. § 1252(g)). Respondents assert that "[t]he bar on considering the commencement of proceedings includes a bar on considering challenges to the *basis on which* DHS chooses to commence removal proceedings." (*Id.* at 17-18).

In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), the Supreme Court explained that § 1252(g)'s jurisdictional bar applies only to "three discrete actions" – the commencement of removal proceedings, adjudication of removal proceedings, and execution of removal orders. The Supreme Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* More recently, in *Jennings*, the Court reaffirmed this narrow reading, explaining that *Reno* "did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." 583 U.S. at 294. Instead, the statutory language refers "to just those three specific actions themselves." *Id.*

Though § 1252(g) indeed imposes a jurisdictional bar on a court's ability to review certain habeas petitions, the restrictions are to be read narrowly. *See, e.g.*, *Reno*, 525 U.S. at 487 (referencing the Court's "narrow reading of § 1252(g)"); *Gutierrez*, 2025 WL 2962908, at *3 ("Section 1252(g) imposes a narrow judicial bar to a federal court's review of 'any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.'") (quoting 8 U.S.C. § 1252(g)); *Hasan*, 2025

WL 2682255, at *4 ("Section 1252(g) has a narrow reach."); *Garcia Cortes*, 2025 WL 2652880, at *1 ("These statutory bars are read narrowly."); *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *3 (S.D. Fla. Sep. 9, 2025) ("The Supreme Court has given § 1252(g) a 'narrow reading,' emphasizing that it does not cover 'all claims arising from deportation proceedings' or impose 'a general jurisdictional limitation.'") (quoting *Reno,* 525 U.S. at 482, 487).

Here, Petitioner does not challenge the commencement of removal proceedings, the adjudication of removal proceedings, or the execution of removal orders.  Instead, he challenges "the narrow legal questions of whether [his] detention under 8 U.S.C. § 1225 violates the INA and whether he is entitled to a bond hearing under § 1226's discretionary detention framework." *Gutierrez*, 2025 WL 2962908, at *3.  As such, Petitioner's claims fall outside the narrow jurisdictional limitations of § 1252(g) and, accordingly, § 1252(g) does not deprive the Court of jurisdiction.  This conclusion is consistent with many district courts that have recently addressed this jurisdictional challenge from the government.  *See, e.g.*, *id.* (finding § 1252(g) did not strip the court of jurisdiction to consider petitioner's challenge to his detention under § 1225 rather than § 1226); *S.D.B.B.*, 2025 WL 2845170, at *3 (same); *Hasan*, 2025 WL 2682255, at *4 (same); *Garcia Cortes*, 2025 WL 2652880, at *l (same); *Grigorian*, 2025 WL 2604573, at *4 (same).

Respondents cite only one decision, from the District of Minnesota, that has squarely ruled that § 1252(g) bars a district court's jurisdiction to consider a petitioner's challenge to detention.  *See S.Q.D.C. v. Bondi*, No. 25-3348 (PAM/DLM), 2025 WL 2617973, at *3 (D. Minn. Sept. 9, 2025).  That decision "appears to represent an extreme

minority position, both in its own district and nationally." *Gonzalez Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *2 (W.D. Tex. Oct. 21, 2025); *see also Belsai D.S. v. Bondi*, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *5 n.3 (D. Minn. Oct. 1, 2025) ("respectfully disagree[ing] with the conclusion reached by the Court in *S.Q.D.C.*").[6]

### 3.    Conclusion

The undersigned concludes that neither § 1252(a)(5), § 1252(b)(9), nor § 1252(g) bars this Court from jurisdiction to consider Petitioner's challenge to his detention.

### B.    Section 1226(a) Applies to Petitioner's Detention.

Petitioner argues he is being held in violation of the INA and that 8 U.S.C. § 1225(b)(2) does not apply to him because he "previously entered the country and ha[s] been residing in the United States prior to being apprehended." (Doc. 1, at 12).  According to Petitioner, his continued detention under § 1225(b)(2) is unlawful and he is entitled to a bond hearing under § 1226(a) – as an alien who previously entered the country and has been residing in the United States before being apprehended and placed in removal proceedings by ICE.  (*Id.*)

---

[6] The district court in *S.Q.D.C.* relied on *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016).  *S.Q.D.C.*, 2025 WL 2617973, at *3.  Respondents likewise rely on *Alvarez* to argue that "[t]he bar on considering the commencement of proceedings includes a bar on considering challenges to the *basis on which* DHS chooses to commence removal proceedings."  (Doc. 8, at 17-18).  Not only is *Alvarez* distinguishable on its facts from those here, but district courts considering detention orders have also recently disagreed with jurisdictional arguments relying on *Alvarez*. *E.g.*, *Avila v. Bondi*, No. 25-3741 (JRT/SGE), 2025 WL 2976539, at *4 (D. Minn. Oct. 21, 2025); *Belsai D.S.*, 2025 WL 2802947, at *5 n.3; *Grigorian*, 2025 WL 1895479, at *4-5 (S.D. Fla. July 8, 2025).

Respondents contend that Petitioner is an "applicant for admission" and therefore properly detained under § 1225(b)(2)(A).  (Doc. 8, at 20).  That is, because Petitioner did not enter the country lawfully and has not offered to voluntarily depart, he is still considered an "applicant for admission" or "seeking admission" under § 1225.  (*Id.* at 20-22).  In arguing this point, Respondents contend that detention under § 1225(b)(2)(A) is not limited to aliens "arriving" in the United States, and that a contrary interpretation would undermine the purpose of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. (*Id.* at 20-24).  Further, Respondents claim (1) § 1226(a) is reserved for those who do not fall within the confines of § 1225(b)(2)(A), namely, aliens who entered the country lawfully, and (2) any overlap between the two provisions does not undermine ICE's interpretation of the two statutes.  (*Id.* at 24-28).

The parties agree that if Petitioner is an "applicant for admission" under § 1225(b)(2)(A), he is not entitled to a bond hearing.  (Doc. 1, at 2; Doc. 8, at 13).  They further agree that if he is not an "applicant for admission" under § 1225, then Petitioner falls within the confines of § 1226(a), which would entitle him to a bond hearing. *Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").  The undersigned has reviewed the statutory text, Congressional intent, legislative history, and § 1226(a)'s application for the past three decades, as well as numerous recent cases addressing this exact issue.  The undersigned agrees with the great weight of authority and finds that Petitioner falls within the confines of § 1226(a), and not § 1225(b)(2)(A).  As such, Petitioner is entitled to a bond re-determination hearing.

1.    **Statutory Interpretation of § 1225(b)(2)(A) and § 1226(a)**

When interpreting a statute, the "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). "If the statutory language is plain, [the Court] must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015). "But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Id.* (citation modified). "So when deciding whether the language is plain, the Court must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (citation modified).

Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(l) (citation modified). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13). As relevant here, § 1225(b)(2)(A) allows an examining immigration officer to detain "an applicant for admission" under § 1229a if the alien "seeking admission is not clearly and beyond a doubt entitled to be admitted." *Id.* § 1225(b)(2)(A). Section 1226(a), on the other hand, authorizes detention of an alien "on a warrant issued by the Attorney General" pending removal proceedings. *Id.* § 1226(a).

At issue is whether "an applicant for admission" – that is, "an alien present in the United States who has not been admitted" – includes an alien like Petitioner who intentionally avoided lawful entry. *See id.* § 1225(a)(l). The statutory text does not provide a definitive answer as to what it means to be present without admittance where, as here,

the alien has already entered and spent many years residing in the United States. Even when statutory terms are unambiguous, context still matters. *See United States v. Bishop*, 412 U.S. 346, 356 (1973) ("[C]ontext is important in the quest for [a] word's meaning."); *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1144 (10th Cir. 2004) (noting that statutory interpretation "requires [courts] to interpret Congress's choice of words in the context that it chose to use them"). Further, "it is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation modified). When considering the overall context of § 1225, the undersigned concludes the statute limits the scope of the terms "applicant for admission" and "seeking admission" in § 1225(b)(2)(A).

At the outset, giving effect to each clause and word of a statute includes an analysis of the statute's title. "A title is especially valuable where it reinforces what the text's nouns and verbs independently suggest." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (citation modified). Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (Emphasis added). The use of "arriving" to describe aliens indicates that the statute governs the entrance of aliens to the United States at the border or ports of entry.

This reading is bolstered by the fact that § 1225 establishes an inspection scheme for when to let aliens into the country. In fact, the subheading for § 1225(b)(2) reads "Inspection of Other Aliens," reinforcing the idea that the subsection applies to those coming in, not already present. Section 1225(d) is labeled "Authority Relating to

Inspections" and describes the powers of immigration officers to search and detain vessels and "arriving aliens." *See* 8 U.S.C. § 1225(d)(l) (authorizing immigration officers to "board and search any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"); *id.* § 1225(d)(2) (authorizing immigration officers to detain an "arriving" alien and incoming vessel or aircraft and to deliver the "arriving" alien for inspection). Section 1225 also explicitly addresses its effect on "stowaways" and "crewmen," words that likewise suggest arrival at a border or port of entry. *See id.* § 1225(a)(2) ("An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted shall be ordered removed upon inspection by an immigration officer."); *id.* § 1225(a)(3) ("All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.").

Further, § 1225's place in the overall statutory scheme supports the undersigned's reading. *See King*, 576 U.S. at 486 (holding that courts are meant to "construe statutes, not isolated provisions") (citation modified). That Congress separated removal of "arriving aliens" from its more general section for "Apprehension and detention of aliens" in § 1226, strongly implies that Congress enacted § 1225 for a specific, limited purpose. Whereas § 1225 governs removal proceedings for "arriving aliens," § 1226(a) serves as a catch-all. As the Supreme Court in *Jennings* explained, § 1226(a) is the "default rule" and "applies to aliens already present in the United States." 583 U.S. at 288, 303.[7] The inclusion of

---

[7] Both Petitioner and Respondents argue that *Jennings* supports their position. (Doc. 8, at 13; Doc. 9, at 6). The Court in *Jennings*, however, did not rule on whether non-admitted

both provisions in the INA is likely no coincidence, but rather a way for Congress to delineate between the specified categories of § 1225 and the more general provision of § 1226(a), which captures aliens who fall outside of § 1225's specificity.

After considering the text and statutory framework, the undersigned concludes the terms "applicant for admission" and "seeking admission" in § 1225(b)(2) do not cleanly apply to aliens like Petitioner.  "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States.  The use of the present participle in § 1225(b)(2)(A) implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection." *Caballero*, 2025 WL 2977650, at *6 (citation modified).  In contrast, Petitioner has resided in the United States continuously for over twenty years, never sought admission, and was not arrested when attempting to cross the border or pass through a port of entry illegally.  (Doc. 8, at 15-16).  "Simply put, noncitizens who are just 'present' in the country, who have been here for years upon years and never proceeded to obtain any form of citizenship, are not 'seeking' admission under § 1225(b)(2)(A)." *Caballero*, 2025 WL 2977650, at *6 (citation modified).  Ultimately, a textual analysis of

_____

or inadmissible aliens were governed by § 1225(b)(2)(A) or § 1226(a).  Accordingly, the undersigned takes the same approach as other courts that have recently addressed this issue and cites *Jennings* for its acknowledgement that § 1226(a) is the default rule but does not make a recommendation based on *Jennings*. *See, e.g.*, *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 n.4 (E.D. Mich. Sep. 9, 2025) ("The Court cites *Jennings* because it acknowledges § 1226(a) as the default rule.  But the Supreme Court did not rule on whether non-admitted or inadmissible aliens fell within boundaries of § 1226(a) as opposed to § 1225(b)(2)(A)."); *S.D.B.B.*, 2025 WL 2845170, at *5 ("On the other hand, § 1226(a) sets out the 'default rule' for detaining and removing aliens 'already present in the United States.'") (quoting *Jennings*, 583 U.S. at 303).

15

the immigration framework suggests Petitioner's circumstances align with § 1226(a), not

§ 1225(b)(2)(A).

### 2.    Legislative History and Recent Amendment

The legislative history and recent amendment of § 1226 also indicate the statute

applies to aliens who reside in the United States but previously entered without inspection.

First, § 1226(a)'s predecessor statute, 8 U.S.C. § 1252(a)(l),

> governed deportation proceedings for all noncitizens arrested within the
> United States. *See* 8 U.S.C. § 1252(a)(l) (1994) ("Pending a determination
> of deportability any noncitizen may, upon warrant of the Attorney General,
> be arrested and taken into custody."); *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th
> Cir. 1999) ("A deportation hearing was the 'usual means of proceeding
> against a noncitizen already physically in the United States.'").   This
> predecessor statute, like Section 1226(a), included discretionary release on
> bond. *See* § 1252(a)(l) (1994) ("Any such noncitizen taken into custody may,
> in the discretion of the Attorney General be continued in custody or be
> released under bond.").   Upon passing [the Illegal Immigration Reform and
> Immigrant Responsibility Act of 1996], Congress declared that the new
> Section 1226(a) "restates the current provisions in the predecessor statute
> regarding the authority of the Attorney General to arrest, detain, and release
> on bond a noncitizen who is not lawfully in the United States." H.R. Rep.
> No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210 (same).

*Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025) (citation modified);

*see also Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *7 (E.D. Mich.

Sep. 9, 2025) ("If § 1226(a) adopted the predecessor[] [statute]'s authority to release

noncitizens unlawfully present in the United States on bond, then [petitioner] is entitled to

discretionary release on bond as well.").   This history contradicts Respondent's claim that

applying § 1226 to Petitioner "[u]ndermines the [p]urpose of the [Illegal Immigration

Reform and Immigrant Responsibility Act]." (Doc. 8, at 22).

16

In addition, and contrary to Respondents' assertions, Congress' recent amendment to § 1226 renders the government's interpretation of § 1225(b)(2)(A) superfluous. Earlier this year, Congress amended § 1226 via the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025). The Laken Riley Act added § 1226(c)(l)(E), which mandates detention for aliens who

- are inadmissible under § 1182(a)(6)(A) (aliens present in the United States without being admitted or paroled, like Petitioner), § 1182(a)(6)(C) (misrepresentation), or § 1182(a)(7) (lacking valid documentation) and

- have been arrested for, charged with, or convicted of certain crimes.

8 U.S.C. § 1226(c)(1)(E)(i)-(ii).

Considering that § 1182(a)(6)(A)(i) specifically refers to "alien[s] present in the United States without being admitted or paroled," and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed certain felonies, the new statutory exception would be superfluous if § 1225(b)(2) already authorized their mandatory detention regardless of felony status. That is, because an "alien present in the United States" without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," ICE would never need to rely on § 1226(c)(1)(E) to detain them. *See Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.") (citation modified). District courts have noted that adoption of Respondents' interpretation "would largely nullify a statute Congress enacted this very year and must be rejected." *Pizarro Reyes*, 2025 WL 2609425, at *5 (quoting *Gomes v.*

*Hyde,* No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025)) (citation modified).

The undersigned's recommended interpretation is consistent with recent holdings of numerous district courts that have ruled on this exact issue. *See, e.g., Menjivar Sanchez v. Wofford,* No. 1:25-cv-01187-SKO (HC), 2025 WL 2959274, at *5 (E.D. Cal. Oct. 17, 2025) ("The third problem with the government's argument is that application of section 1225(b)(2)(A) to noncitizens already in the country would render superfluous a recent amendment to section 1226(c)."); *Alvarez Puga v. Assistant Field Off. Dir., Krome N Serv. Processing Ctr.,* No. 25-24535-CIV, 2025 WL 2938369, at *5 (S.D. Fla. Oct. 15, 2025) ("If Respondents' interpretation of section 1225 is correct – that the mandatory detention provision in section 1225(b)(2)(A) applies to all noncitizens present in the United States who have not been admitted – then Congress would have had no reason to enact section 1226(c)(l)(E)."); *Alejandro v. Olson,* No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *8 (S.D. Ind. Oct. 11, 2025) ("Under Respondents' expansive interpretation of § 1225, the amendment would have no purpose.  Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act."); *Hyppolite v. Noem,* No. 25-CV-4304 (NRM), 2025 WL 2829511, at *10 (E.D.N.Y. Oct. 6, 2025) (same); *Quispe v. Crawford,* 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, at *5 (E.D. Va. Sep. 29, 2025) (same); *Jimenez v. FCI Berlin, Warden,* No. 25-cv-326-LM-AJ, --- F. Supp. 3d---, 2025 WL 2639390, at *9 (D.N.H. Sep. 8, 2025) (same); *Maldonado v.*

*Olson*, No. 25-cv-3142 (SRN/SGE), 2025 WL 2374411, *12 (D. Minn. Aug. 15, 2025)
(same); *Gomes*, 2025 WL 1869299, at *6-7 (same).

### 3.    BIA's Current and Historical Interpretations of § 1225(b)(2)(A) and § 1226(a)

On September 5, 2025, the BIA issued a precedential decision holding that an
immigration judge lacks authority to consider a bond request for any person who is present
in the United States without admission, treating such person as an applicant for admission
and subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  *Hurtado*, 29 I. & N.
Dec. at 220, 229.  The BIA in *Hurtado* concluded that § 1225(b)(2)(A) covers inadmissible
aliens who lived unlawfully in the United States for longer than two years without
apprehension. *Id.* at 229.

The undersigned reaches the opposite conclusion from the BIA's statutory analysis
in *Hurtado*.    Notably, this Court is not bound by the BIA's interpretation of §
1225(b)(2)(A).  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("Courts
need not and under the APA may not defer to an agency interpretation of the law simply
because a statute is ambiguous.") (citation modified).  In *Hurtado*, the BIA characterized
as a "legal conundrum" the idea that an alien's continued unlawful presence means they
are not "seeking admission."  29 I. & N. Dec. at 221.  However, an alien's continued
presence cannot constitute "seeking admission" when that alien *never attempted* to obtain
lawful status.  This is especially true in light of § 1225's statutory context.  The BIA also
found that § 1225(b)(2)(A) does not render superfluous the Laken Riley Act.  *Id.* at 222.
Considering, however, that both § 1225(b)(2)(A) and § 1226(c)(1)(E) mandate detention

19

for inadmissible aliens, the fact that one includes additional conditions for such detention does not alter the redundant impact.

The BIA's decision in *Hurtado* reflects a sharp pivot from long-standing immigration practice and policies. For almost three decades, most aliens who entered without inspection and were later apprehended were placed in standard removal proceedings and received bond hearings, unless subject to an exception. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.") (citation modified). The decades of ICE practices lend support to Petitioner's entitlement to a bond re-determination hearing under § 1226(a) "because the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Loper Bright Enters.*, 603 U.S. at 386 (citation modified). Respect for Executive Branch interpretations of statutes may be "especially warranted" when the interpretation "was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.*

Accordingly, the government's historical application of immigration laws also supports the undersigned's conclusion that § 1226(a) applies to Petitioner. Again, this analysis aligns with numerous courts that have recently addressed this issue. *See, e.g.*, *Jimenez Garcia v. Raybon*, No. 25-cv-13086, 2025 WL 2976950, at *4 (E.D. Mich. Oct. 21, 2025) (finding that "ICE's decision to upend 30 years of reasoned statutory

interpretation is not persuasive"); *Sabi Polo v. Chestnut*, No. 1:25-CV-01342 JLT HBK, 2025 WL 2959346, at *11 (E.D. Cal. Oct. 17, 2025) ("Accordingly, the Court finds the well-reasoned decisions of the many district courts that have rejected the Government's expansive view of 1225(b)(2) far more persuasive than the new BIA ruling, a ruling at odds with its prior decisions and DHS's actions over the past thirty years.") (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at * 12 (N.D. Cal. Sep. 12, 2025)).

### 4.    Conclusion

In sum, the undersigned is not persuaded by BIA's newfound statutory interpretation or Respondents' arguments and instead agrees with the myriad district courts that have recently applied § 1226(a) to govern detention of aliens like Petitioner. Respondents' arguments and BIA's decision to pivot from decades of consistent statutory interpretation and to mandate Petitioner's detention under § 1225(b)(2)(A) are contrary to nearly every court that has recently addressed this question of statutory interpretation.

As a starting point, district courts within the Tenth Circuit have uniformly applied § 1226(a) to aliens living in the United States who were not apprehended at the border. *See, e.g.*, *Urbina Garcia v. Holt*, No. CIV-25-1225-J, 2025 WL 3516071, at *4 (W.D. Okla. Dec. 8, 2025) ("[T]he Court finds that Petitioner is entitled to a bond hearing and Respondents' failure to provide one violates § 1226(a) of the INA."); *Cruz Valera v. Baltazar*, No. 1:25-cv-3744-CNS, 2025 WL 3496174, at *3 (D. Colo. Dec. 5, 2025) ("Respondents' arguments do not persuade the Court that it should deviate from its prior determination that § 1225(b)(2)(A) and its mandatory detention requirement do not apply

to noncitizens, like Petitioner, who have been present in the United States for over two decades."); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-1031-KG-JFR, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) ("Consistent with the majority of district courts to address the issue, this Court finds that § 1226 governs here."); *Arauz v. Baltazar*, No. 1:25-CV-03260-CNS, 2025 WL 3041840, at *4 (D. Colo. Oct. 31, 2025) ("Simply put, because Petitioner has lived in the United States for nearly 40 years and was not detained while attempting to enter the country, he is improperly subject to mandatory detention under § 1225(b)(2)(A) and should instead be detained under § 1226(a)"); *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *7 (D. Colo. Oct. 24, 2025) ("The Court joins the many other courts nationwide who have declined to accept Respondents' novel new interpretation of decades-old law."); *Caballero*, 2025 WL 2977650, at *8 ("The Court joins the numerous courts across the country that have held that [aliens not apprehended at the border, who have been present in the United States for many years without lawful status] are subject to the discretionary detention framework of § 1226(a)."); *Gutierrez*, 2025 WL 2962908, at *4-5 (finding that "Petitioner is likely to succeed on the merits of his claims that he is unlawfully detained under 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention authority and should be subject to 8 U.S.C. § 1226(a)'s discretionary scheme," and respondents had "readily admit[ted] that other district courts that have considered this same or similar issue have concluded that aliens who enter without inspection and then reside in the United States fall within the scope of Section 1226(a) rather than Section 1225(b)(2)(A)") (citation modified).

Further, in the last few weeks alone, numerous district courts around the country have consistently applied § 1226(a) to govern detention proceedings for aliens like Petitioner.[8] *See, e.g.*, *Balderas v. Olson*, No. 25 C 12749, 2025 WL 3210422, at *1 (N.D. Ill. Nov. 17, 2025) ("This case is similar to hundreds of cases across the country, and nearly all district judges have determined that the government's novel interpretation of the immigration detention statute is contrary to its plain language and inconsistent with binding precedent. This Court now joins the chorus of decisions granting a bond hearing to a detainee who had previously been present and living in the United States—a right guaranteed by statute and the Constitution."); *Jimenez Garcia*, 2025 WL 2976950, at *4 ("To this Court, there is simply no question that § 1226(a)—not § 1225(b)(2)(A)—applies to noncitizens such as [petitioner] who have resided in the United States for many years and were not apprehended while arriving at the border."); *Sabi Polo*, 2025 WL 2959346, at *11 ("This Court . . . joins the numerous other district courts that have rejected the government's recent interpretation of the relationship between § 1225 and § 1226."); *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025) ("In agreement with other district courts, this court rejects Respondents' expanded reading of § 1225(b)(2) and the term 'seeking admission.'"); *Padron Covarrubias v.*

---

[8] On December 9, 2025, at least fifteen opinions uniformly held on the merits that § 1226(a) governs detention for aliens like Petitioner. *See, e.g.*, *Duran Avalos v. Bondi*, No. C25-4063-LTS-KEM, 2025 WL 3530162, at *2 (N.D. Iowa, Dec. 9, 2025); *Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528, at *6 (E.D. Pa. Dec. 9, 2025); *Morales v. Bondi*, No. 1:25-cv-1472, 2025 WL 3525488, at *6 (W.D. Mich. Dec. 9, 2025); *Ramirez Ibanez v. Lynch*, No. 1:25-cv-1493, 2025 WL 3525324, at *6 (W.D. Mich. Dec. 9, 2025); *Cruz-Flores v. Noem*, No. 25-CV-3263 JLS (VET), 2025 WL 3526830, at *4 (S.D. Cal. Dec. 9, 2025).

*Vergara*, No. 25-CV-112, 2025 WL 2950097, at \*4 (S.D. Tex. Oct. 8, 2025) ("Along with most other courts that have considered this issue, the Court finds that [petitioner] is not properly detained without a bond hearing under Section 1225, and instead, Section 1226 applies."); *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at \*3 (S.D. Tex. Oct. 7, 2025) ("As almost every district court to consider this issue has concluded, the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades support finding that § 1226 applies to these circumstances.") (citation modified).

Finally, the undersigned has considered Respondents' citations to two recent cases adopting their position that aliens like Petitioner are "applicants for admission" despite years of residing in the United States. *See Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, --- F.3d. Supp. ---, 2025 WL 2730228, at \*4 (S.D. Cal. Sep. 24, 2025); *Sandoval v. Acuna*, No. 6:25-cv-1467, 2025 WL 3048926, at \*3 (W.D. La. Oct. 31, 2025). For the reasons previously discussed, the undersigned respectfully disagrees with the textual analysis and statutory interpretations by these district courts. The undersigned instead agrees with the overwhelming number of courts that have recently addressed this question.

After carefully analyzing the statute's text, structure, history, and long-standing immigration practices, the undersigned recommends that the Court apply § 1226(a) to govern Petitioner's detention. Further, the undersigned concludes that Petitioner is entitled under § 1226(a) to a prompt individualized bond hearing before a neutral Immigration Judge. *See, e.g.*, *Alvarez Puga*, 2025 WL 2938369, at \*5 (finding "that section 1226(a) and its implementing regulations govern [p]etitioner's detention, not section

1225(b)(2)(A)" and that petitioner "is entitled to an individualized bond hearing as a detainee under section 1226(a)"). Accordingly, the undersigned recommends that the Court grant the Petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) within seven days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.

### C.    The Court Should Decline to Address Petitioner's Due Process Claim.

In his second habeas claim, Petitioner argues that his continued detention without a bond re-determination hearing violates his rights to due process. (Doc. 1, at 13). If the Court grants Petitioner's requested relief for a bond re-determination hearing under § 1226(a), the undersigned recommends that the Court follow an approach of other district courts and decline to decide the merits of the due process claim, and allow Petitioner to renew that claim if Respondents do not provide him with a bond hearing or release him within the ordered time. *See Pizarro Reyes*, 2025 WL 2609425, at *8 ("The Court will decline to decide the merits of [petitioner's] due process claim given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a)."); *see also Jimenez Garcia*, 2025 WL 2976950, at *4 (same); *Alvarez Puga*, 2025 WL 2938369, at *6 (citing *Pizarro Reyes* and declining to decide the merits of petitioner's due process claim); *Buenrostro-Mendez*, 2025 WL 2886346, at *3 n.4 (same).[9]

---

[9] Respondents argue that Petitioner's due process claim insufficiently alleges facts to warrant habeas relief. (Doc. 8, at 28-30). Because the undersigned recommends that the Court grant relief under Petitioner's statutory claim and agrees that Petitioner's due process allegations are unclear and conclusory, this Report and Recommendation does not address the merits of any due process claim potentially raised by Petitioner.

## VI.    Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition (Doc. 1) be **GRANTED in part.**  The undersigned recommends that the Court order Respondents to provide Petitioner with an individualized bond hearing under 8 U.S.C. § 1226(a) within seven days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.  The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within ten days of the Court's order.

**The court advises the parties of their right to object to this Report and Recommendation by December 19, 2025**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[10]  The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[10] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations to seven days.  *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

**ENTERED** this 12th day of December, 2025.


_Amanda L. Maxfield_
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE